UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLENE C. D.,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>TIMOTHY S. ROBBINS, Field Office Director of the Los Angeles Field Office of U.S. Immigration and Customs Enforcement; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; KRISTI NOEM, Secretary of the United States Department of Homeland Security; CHRISTOPHER CHESTNUT, Administrator of California City Detention Facility; and PAMELA BONDI, Attorney General of the United States,<br><br>　　　　　Respondents. | No.  1:25-cv-01463-KES-SKO (HC)<br><br>ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION<br><br>Doc. 8 |

　　　　This habeas action concerns the re-detention of petitioner Clene C. D., a noncitizen who was detained and released in 2024 but was recently re-detained.[1] This matter is before the Court on petitioner's motion for temporary restraining order. Doc. 8. For the reasons explained below,

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

1  petitioner's motion for temporary restraining order, which the Court converts to a motion for
2  preliminary injunction, is granted.

3  **I.      Background**

4  Petitioner is a 29-year-old asylum-seeker from Brazil who entered the United States with
5  her spouse on October 18, 2024. Doc. 15 at ¶¶ 19–21. She crossed the southern border near
6  Calexico, California without inspection. Doc. 12-1, Juarez Decl. at ¶ 5. The same day she
7  entered, immigration authorities arrested and detained her. Doc. 15 at ¶ 21. A month later, on
8  November 19, 2024, immigration officials provided petitioner with a notice to appear for removal
9  proceedings. Doc. 12-1, Ex. 1. In the notice to appear, immigration officials designated her as
10 "an alien present in the United States who has not been admitted or paroled"; they did not
11 designate her as an "arriving alien." *Id.* Immigration officials released petitioner on her own
12 recognizance pending those removal proceedings.[2] Doc. 12-1, Ex. 2. The next day, they released
13 her and provided her with an order of release on recognizance which stated that she was being
14 released "in accordance with" 8 U.S.C. § 1226, provided that she comply with certain conditions.
15 Doc. 12-1, Ex. 2.

16 The regulations that authorize immigration authorities to release a noncitizen on her own
17 recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such
18 release would not pose a danger to property or persons" and that the noncitizen is "likely to
19 appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a
20 determination by the government that the noncitizen is not a danger to the community or a flight
21 risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia*
22 *for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

23 Following her release, petitioner lived with her spouse in Contra Costa County, California.
24 Doc. 15 at ¶ 25. As a condition of her release, petitioner was required to enroll in the Alternatives
25 to Detention program. Doc. 15 at ¶¶ 25–27. Respondents do not dispute petitioner's assertions

---

[2] The first amended petition, which is not verified, states that petitioner was paroled pursuant to 8 U.S.C. § 1182(d)(5)(A), but the government's evidence establishes that petitioner was released on her own recognizance pursuant to 8 U.S.C. § 1226(a). *See* Doc. 16 at 2–3; Doc. 12-1, Ex. 2.

that she complied with all conditions of her release and maintained a clean criminal record.[3]  *Id.* ¶¶ 1, 12, 25–27; *see* Docs. 12, 16.  Petitioner and her spouse also sought relief in their removal proceedings.  Doc. 15 at ¶ 24.  Their cases were consolidated, and on April 30, 2025, an immigration judge issued a finding of removability and set a schedule for petitioner to file applications for relief.  Doc. 12-1, Ex. 3.  Petitioner thereafter filed an asylum application.  Doc. 15 at ¶ 24.

In late October 2025, ICE instructed petitioner to appear at the San Francisco ICE Field Office on October 31, 2025.  *Id.* ¶ 26.  When petitioner appeared as instructed, ICE agents detained her.  *Id.* ¶ 28.  She is now detained at California City Detention Center.  *Id.* ¶ 3.

## II.     Procedural History

On November 3, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 8.  Respondents filed an opposition on November 12, 2025.  Doc. 12.  The Court noted that the motion for temporary restraining order relied upon facts and raised arguments that were not set out in the original petition.  Doc. 14.  The Court permitted petitioner to file an amended petition.  Doc. 14.  Petitioner filed an amended petition on November 15, 2025.  Doc. 16.  Respondents filed a supplemental opposition, Doc. 16, and petitioner filed a reply, Doc. 17.

## III.    Conversion to a Motion for Preliminary Injunction

When the Court set a briefing schedule on the motion, it ordered the parties to state their position on whether the motion for temporary restraining order should be converted to a motion for preliminary injunction and whether the parties requested a hearing on the motion.  Doc. 10.  Neither party objected to converting the motion or requested a hearing.  *See* Docs. 16, 17.  Given that the standard for issuing a temporary restraining order and preliminary injunction is the same, *see Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001), and respondents had notice and opportunity to respond in opposition, *see* Docs. 12, 16, petitioner's

---

[3] The first amended petition notes that petitioner was one hour late in submitting a photo over the cell phone monitoring application on one occasion and that she was instructed to take a picture of herself at her residence while she was on her way to work on another occasion.  *Id.* ¶ 27.  Respondents do not allege that petitioner violated her release conditions.  *See id.*; Docs. 12, 16.

3

1  motion is converted to a motion for preliminary injunction.

2  **IV.    Legal Standard**

3  "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

17  **V.    Discussion**

18  **a.    Likelihood of Success on the Merits**

19  Petitioner argues that, because civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community, see *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023), the Due Process Clause bars the government from re-detaining her without first providing a hearing where it must prove she is a flight risk or danger. Doc. 8 at 4–10. In response, respondents argue that petitioner has no procedural due process rights because she is subject to the "entry fiction" doctrine.

26  This doctrine arises from the distinction made by our immigration laws "between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality. In the latter instance, the [Supreme] Court has

4

recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Leng May Ma v. Barber,* 357 U.S. 185, 187 (1958). For those on the threshold, they have only those rights provided by statute. *See U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950). But "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority.").

In some instances, however, one may be physically present in the United States but still treated as if stopped at the border. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020). That is because the distinction between those outside and inside the country "would be meaningless if it became inoperative as soon as an arriving alien set foot on U. S. soil. When an alien arrives at a port of entry—for example, an international airport—the alien is on U. S. soil, but the alien is not considered to have entered the country for the purposes of this rule." *Id.* In *Thuraissigiam*, the Court held that this doctrine applies when a noncitizen manages to run 25 yards past the border before being apprehended by immigration officials; the noncitizen there could not be considered to have "effected an entry." *See id.* at 114, 140.

The cases cited by respondents, with one exception, hold that the entry fiction doctrine addresses due process rights regarding *admission* into the country—not detention.[4] *Id.* at 140

---

[4] Respondents identify one case which extended the applicability of the "entry fiction" doctrine to a challenge to immigration detention: *Barrera-Echavarria v. Rison*, 44 F.3d 1441 (9th Cir. 1995). In *Barrera-Echavarria*, the petitioner was a noncitizen who was detained at a port of entry and ordered excluded, was paroled into the country pursuant to 8 U.S.C. § 1182(d)(5)(A), and was then subsequently re-detained. *Id.* at 1143–44. The Ninth Circuit held that the petitioner was subject to the entry fiction doctrine, even though he had been paroled into the country pursuant to 8 U.S.C. § 1182(d)(5)(A) for some period of time. *Id.* at 1450 (citing *Gisbert v. U.S. Atty. Gen.*, 988 F.2d 1437, 1440 (5th Cir. 1993)). And "[b]ecause excludable aliens are deemed under the entry doctrine not to be present on United States territory, a holding that they have no substantive right to be free from immigration detention reasonably follows." *Id.* The Ninth Circuit upheld the petitioner's detention and rejected his claim that "his detention in federal prisons almost

("[A]n alien in respondent's position has only those rights *regarding admission* that Congress has provided by statute."); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application . . . ."); *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (discussing *Thuraissigiam* and explaining the distinction between a challenge to admission and a challenge to detention and holding that *Thuraissigiam* does not foreclose a challenge to detention); *see also Wong v. United States*, 373 F.3d 952, 970–75 (9th Cir. 2004), *overruled on other grounds by Wilkie v. Robbins*, 551 U.S 537 (2007) ("The entry fiction is best seen, instead, as a fairly narrow doctrine that primarily determines the *procedures* that the executive branch must follow before turning an immigrant away. Otherwise, the doctrine would allow any number of abuses to be deemed constitutionally permissible merely by labelling certain 'persons' as non-persons.").

Noncitizens outside the country, as well as noncitizens subject to the entry fiction doctrine, do not have due process rights to challenge their denial of admission into the country. As the Supreme Court explained in *Thuraissigiam*, "[t]he power to admit or exclude aliens is a sovereign prerogative; the Constitution gives the political department of the government plenary

---

continuously since 1985 falls on the punishment side of the line and violates his [substantive] right to due process." *Id.* at 1448–50.  The court also appeared to condition its holding on the fact that "under the Cuban Review Plan, Barrera's case continues to be reviewed at least annually to determine if he meets established criteria for granting parole." *Id.* at 1450.  The Court noted that "[w]hen viewed in this light, as a series of one-year periods of detention followed by an opportunity to plead his case anew, we have no difficulty concluding that Barrera's detention is constitutional . . . ." *Id.*

*Barrera-Echavarria* is not controlling because the entry fiction does not apply here, as explained below.  Additionally, the Ninth Circuit has counseled that any case applying the entry fiction doctrine should be read narrowly: "[T]he entry doctrine does not categorically exclude non-admitted aliens from all constitutional coverage . . . . Recognizing such a logical endpoint to the entry fiction prevents its application from becoming an exercise inconsistent with our basic constitutional values. . . . The entry fiction is best seen, instead, as a fairly narrow doctrine that primarily determines the *procedures* that the executive branch must follow before turning an immigrant away." *Wong v. United States*, 373 F.3d at 970–75. *Barrera-Echavarria* does not foreclose a procedural due process challenge to re-detention pending removal proceedings, because it considered a substantive due process challenge to detention after a noncitizen had been ordered excluded.  *See Ramirez v. Sessions*, No. 18-CV-05188-SVK, 2019 WL 11005487, at *6 (N.D. Cal. Jan. 30, 2019) (concluding that *Barrera Echavarria* did not foreclose a noncitizen's due process challenge to mandatory detention under 8 U.S.C. § 1225(b)).

6

1    authority to decide which aliens to admit; and a concomitant of that power is the power to set the

2    procedures to be followed in determining whether an alien should be admitted." *Id.* (internal

3    citations and quotation marks omitted).

4        Respondents ask the Court to apply the "entry fiction" doctrine to petitioner, but the

5    important distinction between this case and those cited above is that here the government did not

6    treat petitioner as if she had been stopped at the border when it detained her after her entry. "The

7    responsibilities of officials with respect to noncitizens at the border" and other ports of entry "are

8    set out in 8 U.S.C. § 1225." *Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 138 F.4th 1102, 1118

9    (9th Cir. 2025). When immigration authorities detained petitioner, they did not treat her as

10   subject to 8 U.S.C. § 1225. Instead, they provided her with an order of release on recognizance,

11   which stated that she was being released "in accordance with" 8 U.S.C. § 1226(a). Doc. 12-1,

12   Ex. 2. It is significant that immigration officials invoked this statute when detaining and releasing

13   petitioner because, under 8 U.S.C. § 1226(a), petitioner has the right to a bond hearing before an

14   immigration judge, *see* 8 C.F.R. § 1236.1(d)(1), and she must be released on bond if she can

15   "establish to the satisfaction of the Immigration Judge . . . that [] she does not present a danger to

16   persons or property, is not a threat to the national security, and does not pose a risk of flight."

17   *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) (quoting *In re Guerra*, 24 I. & N. Dec.

18   37, 38 (BIA 2006)).[5]

19       Section 1226(a) is the discretionary detention authority for "aliens already present in the

20   United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018); *see Cardenas v. Alomar*, No.

21   25-CV-9169 (JMF), 2025 WL 3215573, at *2 (S.D.N.Y. Nov. 18, 2025) (noting the "scores of

22   decisions" that have reached this conclusion). Additionally, the government immediately placed

23   petitioner in removal proceedings pursuant to 8 U.S.C. § 1229a rather than expedited removal

24   proceedings. Doc. 12-1, Ex. 1. While those covered by § 1225(b)(1) are subject to an expedited

25   removal process and are "removed from the United States without further hearing or review"

---

[5] In contrast, those subject to 8 U.S.C. § 1225(b)(2) have no statutory right to a bond hearing. *See Jennings*, 583 U.S. 281, 283 (noting that the parole provision is a limited "exception [which] implies that there are no other circumstances under which aliens detained under § 1225(b) may be released").

7

unless they claim a right to asylum, *see* 8 U.S.C. § 1225(b)(1), those in removal proceedings pursuant to 8 U.S.C. § 1229a have more robust rights to contest their removal, *see* 8 U.S.C. § 1229a. So while it is unclear from the record precisely where and when petitioner was stopped after crossing the border, the government itself treated petitioner as a person who had entered and was already present in the country.

This fact undermines respondents' attempt to apply the entry fiction doctrine. The purpose of that doctrine is to protect the government's "sovereign prerogative" to deny entry to noncitizens seeking *admission*. *Thuraissigiam*, 591 U.S. at 139–40. That sovereign prerogative is not undermined by ruling that petitioner has due process rights in this instance. The government's actions in releasing petitioner subject to § 1226(a) are entirely inconsistent with their new claim that petitioner is subject to the entry fiction doctrine. While "the line between when a person is 'seeking admission' as opposed to being 'already in the country' is not necessarily obvious" in all cases, *see Miguel v. Noem*, No. 25 C 11137, 2025 WL 2976480, at *5 (N.D. Ill. Oct. 21, 2025), here immigration officials implicitly determined that petitioner was "already present in the country" when they released her on an order of release on recognizance pursuant to 8 U.S.C. § 1226(a) and placed her in removal proceedings pursuant to 8 U.S.C. § 1229a. Respondents' new argument that the entry fiction doctrine applies is contradicted by the government's prior conduct.

Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### 1. Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may

8

1   entitle the individual to procedural protections not found in the statute. *See id.* (Due Process
2   requires hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973)
3   (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole
4   context). To determine whether a specific conditional release rises to the level of a protected
5   liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in
6   the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-*
7   *Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation
8   omitted).

9   In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide
10  range of things open to persons" who have never been in custody or convicted of any crime,
11  including to live at home, work, and "be with family and friends and to form the other enduring
12  attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly
13  subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring
14  and seeking authorization to work and travel, her "condition is very different from that of
15  confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole
16  will be revoked only if [she] fails to live up to the parole conditions." *Id.* The revocation of
17  parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore,
18  a parolee possesses a protected interest in her "continued liberty." *Id.* at 481–84. Immigration
19  officials' release of petitioner pursuant to 8 U.S.C. § 1226(a) was similar. Among other things, it
20  allowed her to live in the United States with her spouse and seek relief in her removal
21  proceedings.

22  Respondents argue that the government's prior conditional release of petitioner pursuant
23  to 8 U.S.C. § 1226(a) should not prevent them from re-evaluating that decision and subjecting
24  petitioner to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). *See* Doc. 16 at 3–4. The
25  argument that § 1225(b)(2) could, by its terms, apply to petitioner is incorrect for the reasons set
26  forth in *Sharan S. v. Chestnut*, No. 1:25-CV-01427-KES-SKO (HC), 2025 WL 3167826, at *4–8
27  (E.D. Cal. Nov. 12, 2025). Moreover, even if respondents were correct that
28  section 1225(b)(2)(A) could apply to petitioner, the government previously represented to her, by

9

releasing her on her own recognizance, that she had been released pursuant to section 1226(a). Doc. 12-1, Ex. 1. Under section 1226(a), petitioner would be entitled to a bond hearing, and any custody redetermination would have to be based on whether petitioner is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Petitioner's prior release pursuant to section 1226(a) thus created a reasonable expectation that she would be entitled to retain her liberty so long as she was not a flight risk or danger. *Cf. Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972) (reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest). As another court recognized in this context, once the government "elect[s] to proceed . . . under § 1226, [it] cannot [] reverse course and institute § 1225 . . . proceedings." *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025). Even if section 1225(b) *did* apply, petitioner has a protected liberty interest based on the government's prior representation to her that her release was pursuant to section 1226, combined with the eleven months she spent at liberty while relying on that representation.

The Court finds that petitioner has a protected liberty interest in her release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate her liberty.

### 2. *Mathews* Factors

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through

10

> the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for nearly a year in reliance on the government's previous representations that she was being released pending her removal proceedings. Her detention denies her that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. Petitioner has no criminal history and respondents do not dispute that she complied with all terms of her release. As there have been no procedural safeguards to determine if petitioner's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which

should have been provided before petitioner was detained. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . ."). The Supreme Court has held that Due Process requires a pre-deprivation hearing before those released on parole from a criminal conviction can have their bond finally revoked. *See Morrissey*, 408 U.S. at 480–86. The same is true for those subject to revocation of probation. *Gagnon v. Scarpelli*, 411 U.S. at 782.

Given the absence of "evidence of urgent concerns," the Court concludes that "a *pre-deprivation* hearing [was] required to satisfy due process." *Guillermo M. R.*, 2025 WL 1983677, at *9. Numerous district courts have reached a similar conclusion. *See, e.g.*, *id.*; *Garcia*, 2025 WL 1927596, at *5; *Pinchi*, 2025 WL 1853763, at *3–4; *Ortega*, 415 F. Supp. 3d at 970; *Doe*, 787 F. Supp. 3d at 1093–95; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

With these considerations in mind, petitioner is likely to succeed on the merits.

**b. Irreparable Harm**

Turning to the second *Winter* factor, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Given the Court's conclusion that petitioner is likely to succeed on the merits of her claim that her detention without a bond hearing violates the Due Process Clause, petitioner faces irreparable harm absent a preliminary injunction.

### c. Balance of Equities and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Although the government has a strong interest in enforcing the immigration laws, the issue in this case is not whether the government can detain petitioner at all, but whether it can detain petitioner *without a bond hearing*. Faced with a choice "between [this minimally costly procedure] and preventable human suffering," the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor. "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

## VI.   Conclusion and Order

Accordingly, petitioner's motion for a preliminary injunction, Doc. 8, is GRANTED. Respondents are ORDERED to release petitioner immediately. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that her physical custody is legally justified.

The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4.

Respondents may file an additional brief related to the merits of the petition within 30 days, and petitioner may file a reply brief within 15 days of respondents' brief. Alternatively, the

parties may stipulate to a different briefing schedule or to submitting the petition on the merits based on the current record.

IT IS SO ORDERED.

Dated: December 4, 2025

_____
UNITED STATES DISTRICT JUDGE