UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLENE C. D.,<br><br>Petitioner,<br><br>v.<br><br>TIMOTHY S. ROBBINS, Field Office Director of the Los Angeles Field Office of U.S. Immigration and Customs Enforcement; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; KRISTI NOEM, Secretary of the United States Department of Homeland Security; CHRISTOPHER CHESTNUT, Administrator of California City Detention Facility; and PAMELA BONDI, Attorney General of the United States,<br><br>Respondents. | No. 1:25-cv-01463-KES-SKO (HC)<br><br>ORDER GRANTING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS<br><br>Doc. 15 |

This habeas action concerns the re-detention of petitioner Clene C. D., a noncitizen who was detained and released in 2024 but then re-detained on October 31, 2025. The Court previously granted petitioner's motion for a preliminary injunction and ordered her release. Doc. 18. The Court gave respondents an opportunity to file a response to the first amended petition. *Id.* On January 2, 2026, respondents filed a notice indicating that they were submitting the matter on the merits of the petition based on the current record. Doc. 19. For the reasons explained below, the first amended petition for writ of habeas corpus is granted.

1

**I.     Background**

Petitioner is a 29-year-old asylum-seeker from Brazil who entered the United States with her spouse on October 18, 2024.  Doc. 15 at ¶¶ 19–21.  She crossed the southern border near Calexico, California without inspection.  Doc. 12-1, Juarez Decl. at ¶ 5.  The same day she entered, immigration authorities arrested and detained her.  Doc. 15 at ¶ 21.  A month later, on November 19, 2024, immigration officials provided petitioner with a notice to appear for removal proceedings.  Doc. 12-1, Ex. 1.  In the notice to appear, immigration officials designated her as "an alien present in the United States who has not been admitted or paroled"; they did not designate her as an "arriving alien."  *Id.*  Immigration officials released petitioner on her own recognizance pending her removal proceedings.[1]  Doc. 12-1, Ex. 2.  The next day, they released her and provided her with a Form I-220A Order of Release on Recognizance which stated that she was being released "in accordance with" 8 U.S.C. § 1226, provided that she comply with certain conditions.  Doc. 12-1, Ex. 2.

The regulations that authorize immigration authorities to release a noncitizen on her own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding."  8 C.F.R. § 1236.1(c)(8).  Such "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."  *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Following her release, petitioner lived with her spouse in Contra Costa County, California.  Doc. 15 at ¶ 25.  As a condition of her release, petitioner was required to enroll in the Alternatives to Detention program.  Doc. 15 at ¶¶ 25–27.  Respondents do not dispute petitioner's assertions that she complied with all conditions of her release and maintained a clean criminal record.  *Id.* ¶¶ 1, 12, 25–27; *see* Docs. 12, 16.  Petitioner and her spouse also sought relief in their removal

---

[1] The first amended petition, which is not verified, states that petitioner was paroled pursuant to 8 U.S.C. § 1182(d)(5)(A), but the government's evidence establishes that petitioner was released on her own recognizance pursuant to 8 U.S.C. § 1226(a).  *See* Doc. 16 at 2–3; Doc. 12-1, Ex. 2.

2

proceedings. Doc. 15 at ¶ 24. Their immigration cases were consolidated, and on April 30, 2025, an immigration judge issued a finding of removability and set a schedule for petitioner to file applications for relief. Doc. 12-1, Ex. 3. Petitioner thereafter filed an asylum application, which remains pending. Doc. 15 at ¶¶ 12, 24.

In late October 2025, ICE instructed petitioner to appear at the San Francisco ICE Field Office on October 31, 2025. *Id.* ¶ 26. When petitioner appeared as instructed, ICE agents detained her. *Id.* ¶ 28. She was then transported to California City Detention Center. *Id.* ¶ 3.

## II. Procedural History

On November 3, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 8. Respondents filed an opposition on November 12, 2025. Doc. 12. The Court noted that the motion for temporary restraining order relied upon facts and raised arguments that were not set out in the original petition. Doc. 14. The Court permitted petitioner to file an amended petition. Doc. 14. Petitioner filed an amended petition on November 15, 2025. Doc. 16. Respondents filed a supplemental opposition, Doc. 16, and petitioner filed a reply, Doc. 17.

After converting the motion to one for a preliminary injunction, the Court granted the motion on December 4, 2025, and ordered petitioner's release. Doc. 18. The Court set a thirty-day deadline for respondents to file a response to the petition for writ of habeas corpus. *Id.* at 14. On January 2, 2026, respondents filed a notice indicating that they were submitting the petition on the merits based on the current record. Doc. 19.

## III. Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has

1 served as a means of reviewing the legality of Executive detention, and it is in that context that its
2 protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's
3 habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533
4 U.S. 678, 687 (2001).

**IV.    Discussion**

Petitioner argues that the Due Process Clause bars the government from re-detaining her without first providing a hearing where it must prove she is a flight risk or danger. Doc. 15 at ¶¶ 32–47. In response, respondents argue that petitioner has no procedural due process rights and can be held in detention without a bond hearing because she is subject to the "entry fiction" doctrine. Doc. 16 at 4–6.

The Supreme Court has noted the distinction "between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber,* 357 U.S. 185, 187 (1958). "In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). But those at the threshold of initial entry typically have only those rights provided by statute. *See U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950).

The "entry fiction" doctrine extends this distinction "to some individuals within the United States but who, as a result of their status, are deemed technically to be outside." *Xi v. I.N.S.*, 298 F.3d 832, 837 (9th Cir. 2002). For example, "[w]hen an alien arrives at a port of entry—[such as] an international airport—the alien is on U. S. soil, but the alien is not considered to have entered the country for the purposes of this rule." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020). The entry fiction limits a noncitizen in such

4

1  circumstances to "only those rights *regarding admission* that Congress has provided by statute."
2  *Id.* at 140 (emphasis added); *see also Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170–72 (W.D.
3  Wash. 2023) (addressing the distinction between a challenge to admission and a challenge to
4  detention and holding that *Thuraissigiam* does not foreclose a challenge to detention).  In
5  *Thuraissigiam*, the Court held that this doctrine applied when immigration officials apprehended
6  a noncitizen 25 yards past the border; in that circumstance, the noncitizen could not be considered
7  to have "effected an entry."  *See Thuraissigiam*, 591 U.S. at 114, 140.

8  Respondents ask the Court to apply the "entry fiction" doctrine to petitioner, but here the
9  government did not treat petitioner as if she had been stopped at the border when it detained her
10  after her entry.[2]  "The responsibilities of officials with respect to noncitizens at the border" and
11  other ports of entry "are set out in 8 U.S.C. § 1225."  *Al Otro Lado v. Exec. Off. for Immigr. Rev.*,
12  138 F.4th 1102, 1118 (9th Cir. 2025).  When immigration authorities detained petitioner, they did
13  not treat her as subject to 8 U.S.C. § 1225.  Instead, they provided her with a Form I-220A Order
14  of Release on Recognizance, which stated that she was being released "in accordance with" 8
15  U.S.C. § 1226(a).  Doc. 12-1, Ex. 2.  It is significant that immigration officials invoked this
16  statute when detaining and releasing petitioner because 8 U.S.C. § 1226(a) is the discretionary
17  detention authority for "aliens already present in the United States."  *Jennings v. Rodriguez*, 583
18  U.S. 281, 303 (2018); *see Cardenas v. Alomar*, No. 25-CV-9169 (JMF), 2025 WL 3215573, at *2
19  (S.D.N.Y. Nov. 18, 2025) (noting the "scores of decisions" that have reached this conclusion).
20  Under that statute, petitioner would have the right to a bond hearing before an immigration judge,

---

[2] A noncitizen deemed to be at the border is limited to "those rights regarding admission that Congress has provided by statute"; the Due Process Clause does not provide further rights with respect to such admission. *Thuraissigiam*, 591 U.S. at 140.  "That rule rests on fundamental propositions: The power to admit or exclude aliens is a sovereign prerogative; the Constitution gives the political department of the government plenary authority to decide which aliens to admit; and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." *Id.* (internal citations and quotation marks omitted).  But the power to deny admission at the border does not eliminate due process rights with respect to detention for noncitizens whom the government has elected to release into the country. *See Zadvydas v. Davis*, 533 U.S. at 693 (noting "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

*see* 8 C.F.R. § 1236.1(d)(1), and the right to be released on bond if she "establish[ed] to the satisfaction of the Immigration Judge . . . that [] she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017)  (quoting *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).[3]

The government also placed petitioner in removal proceedings in 2024 pursuant to 8 U.S.C. § 1229a, rather than in expedited removal proceedings.  Doc. 12-1, Ex. 1.  While those covered by § 1225(b)(1) are subject to an expedited removal process and are "removed from the United States without further hearing or review" unless they claim a right to asylum, *see* 8 U.S.C. § 1225(b)(1), those in removal proceedings pursuant to 8 U.S.C. § 1229a have more robust rights to contest their removal, *see* 8 U.S.C. § 1229a.  Although it is unclear from the record precisely where and when petitioner was stopped after crossing the border, the government itself treated petitioner as a person who had entered and was already present in the country.

This fact undermines respondents' attempt to apply the entry fiction doctrine.  The government's prior conduct in releasing petitioner subject to § 1226(a) is inconsistent with respondents' new claim that petitioner is subject to the entry fiction doctrine.  While "the line between when a person is 'seeking admission' as opposed to being 'already in the country' is not necessarily obvious" in all cases, *see Miguel v. Noem*, No. 25 C 11137, 2025 WL 2976480, at *5 (N.D. Ill. Oct. 21, 2025), here immigration officials implicitly determined that petitioner was "already present in the country" when they released her on an order of release on recognizance pursuant to 8 U.S.C. § 1226(a) and placed her in removal proceedings pursuant to 8 U.S.C. § 1229a.

Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the

---

[3] In contrast, those subject to 8 U.S.C. § 1225(b)(2) have no statutory right to a bond hearing.  *See Jennings*, 583 U.S. 281, 283 (noting that the parole provision is a limited "exception [which] implies that there are no other circumstances under which aliens detained under § 1225(b) may be released").

6

Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### 1. Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (Due Process requires hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, her "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if [she] fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in her "continued liberty." *Id.* at 481–84.

Immigration officials' release of petitioner pursuant to 8 U.S.C. § 1226(a) was similar. Among other things, it allowed her to live in the United States with her spouse and seek relief in her removal proceedings. These actions were made possible by petitioner's freedom, which is

"the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

Respondents argue that the government's prior release of petitioner pursuant to 8 U.S.C. § 1226(a) does not prevent them from re-evaluating that decision and subjecting petitioner to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). *See* Doc. 16 at 3–4. The argument that § 1225(b)(2) could, by its terms, apply to petitioner is incorrect for the reasons set forth in *Sharan S. v. Chestnut*, No. 1:25-CV-01427-KES-SKO (HC), 2025 WL 3167826, at *4–8 (E.D. Cal. Nov. 12, 2025).

Even if respondents were correct that section 1225(b)(2)(A) could apply to petitioner, the government previously represented to her, by releasing her on her own recognizance, that she had been released pursuant to section 1226(a). Doc. 12-1, Ex. 1. Under section 1226(a), petitioner would be entitled to a bond hearing, and any custody redetermination would have to be based on whether petitioner is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Petitioner's prior release pursuant to section 1226(a) thus created a reasonable expectation that she would be entitled to retain her liberty so long as she was not a flight risk or danger. *Cf. Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972) (reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest). As another court recognized in this context, once the government "elect[s] to proceed . . . under § 1226, [it] cannot [] reverse course and institute § 1225 . . . proceedings." *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025). Even if section 1225(b) *did* apply, petitioner has a protected liberty interest based on the government's prior representation to her that her release was pursuant to section 1226, combined with the extended time she spent at liberty following that representation.

The Court finds that petitioner has a protected liberty interest in her release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have

8

been released have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate her liberty.

### 2. *Mathews* Factors

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for nearly a year in reliance on the government's previous representations that she was being released pending her removal proceedings. Her detention denies her that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. Petitioner has no criminal history and respondents do not dispute that she complied with all terms of her release. As there have been no procedural safeguards to determine if petitioner's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

1          Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

          On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing. At such a hearing, the government must prove that she is a flight risk or danger to the community by clear and convincing evidence. *See Pablo Sequen v. Albarran*, No. 25-CV-06487-PCP, 2025 WL 2935630, at *13–14 (N.D. Cal. Oct. 15, 2025); *Duong v. Kaiser*, No. 25-CV-07598-JST, 2025 WL 2689266, at *8 (N.D. Cal. Sept. 19, 2025); *see also Addington v. Texas*, 441 U.S. 418, 425–33 (1979) (holding that clear and convincing evidence standard was appropriate standard of proof for civil commitment proceedings for the mentally ill). And that hearing should have occurred before petitioner was re-detained. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . ."). Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)). Given the absence of "evidence of urgent concerns," the Court concludes that "a *pre*-deprivation hearing is required to satisfy due process." *Guillermo M. R.*, 791 F. Supp. 3d at 1036.

### V.  Conclusion and Order

Accordingly, the first amended petition for writ of habeas corpus, Doc. 15, is GRANTED. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that her physical custody is legally justified.

The Clerk of Court is directed to close this case and enter judgment for petitioner.

IT IS SO ORDERED.

Dated:  January 12, 2026

UNITED STATES DISTRICT JUDGE

11